UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARY PERES,

                              Plaintiff,                    **MEMORANDUM & ORDER**
  -against-                                          05 Civ. 1807 (DRH) (MLO)

OCEANSIDE UNION FREE SCHOOL
DISTRICT, HERBERT R. BROWN, in his
individual and official capacity, DORIE
C. CIULLA, in her individual and
official capacity, and RICHARD ROSCHELLE,
in his individual and official capacity,

                              Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**ERIC M. BERMAN, P.C.,**
Attorney for Plaintiff
500 West Main Street, Suite 212
Babylon, New York 11702-3035
By: Eric M. Berman, Esq.

**JAMES R. SANDNER**
Attorney for Defendant Richard Roschelle
52 Broadway, 9th Floor
New York, N.Y. 10004
By: Lena M. Ackerman, Esq.
    Pamela P. Fynes, Esq.

**HURLEY, District Judge:**

## INTRODUCTION

Plaintiff Mary Peres ("Plaintiff") filed the present action against defendants Oceanside Union Free School District (the "District"), Herbert R. Brown ("Brown"), Dorie C. Ciulla ("Ciulla"), and Richard Roschelle ("Roschelle") (collectively, "Defendants") alleging that they violated her rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 ("Section 1983") and that they discriminated against her in violation of the Age

Discrimination in Employment Act (the "ADEA") and the New York State Human Rights Law ("NYSHRL"). Plaintiff also asserts several other state law claims. Roschelle has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

The following summary of facts is drawn from the Complaint. Plaintiff is employed by the District as a high school teacher of marketing and business courses and as Advisor for the Distributive Education Clubs of America/Association of Marketing and Management Students ("DECA") Program at Oceanside High School. (Compl. ¶ 17.) She is also Chairperson of the Board of Trustees of the New York State Chapter of DECA. (*Id.*) She has been employed by the District for over thirty years. (*Id.* ¶ 30.)

In 1994, Plaintiff was appointed Student Projects Coordinator ("SP Coordinator") at Oceanside High School for which she received an additional stipend. (*Id.* ¶ 19.) The SP Coordinator is responsible for coordinating the operation of all extra-curricular activities within the High School. (*Id.* ¶ 20.) Plaintiff continued in this position until she was terminated effective July 1, 2004. (*Id.* ¶ 19.) All of her claims in this lawsuit arise out of this termination.

Specifically, Plaintiff claims that she was removed from this position both as a direct result of her reporting financial improprieties by other District employees and based upon her age. Her claims are discussed in more detail below.

### A. *Plaintiff's Reporting of Financial Improprieties*

Plaintiff alleges that in September 2001, she discovered that the Student Projects Secretary was forging Plaintiff's name on purchase orders. (*Id.* ¶ 58.) She promptly informed

the Assistant High School Principal who, upon information and belief, instructed the Secretary to "cease and desist." (*Id.*¶ 59.) Thereafter, Plaintiff brought this matter to the then High School Principal Gerard Cairns ("Principal Cairns") who ordered the Secretary not to forge Plaintiff's name on purchase orders. (*Id.* ¶ 60.) According to Plaintiff, despite this warning, the Secretary continued to forge Plaintiff's name on documents and Plaintiff began to notice additional financial irregularities. (*Id.*)

Plaintiff continued to report her concerns to the District's "Principals and Administrative Officers." (*Id.* ¶ 62.) On June 4, 2002, Plaintiff met with Brown (the Superintendent of Schools), the Assistant Superintendent, and Principal Cairns to discuss these matters. Plaintiff alleges that at that meeting, "Brown supported the Secretary's actions including the forgeries and financial irregularities, and told Plaintiff to disregard them." (*Id.*)

Thereafter, the alleged forgeries and financial irregularities persisted and Plaintiff continued to report them to the District. (*Id.* ¶ 63.) In March 2003, Plaintiff spoke to Ciulla, who was then the Principal, and relayed her concerns. (*Id.* ¶ 64.) Ciulla in turn discussed the matter with Brown who thereafter ordered Plaintiff to stop making such accusations. (*Id.* ¶ 65.)

In May 2003, during the absence of the Secretary, the Student Projects safe was opened by High School personnel and was discovered to contain $66,000.00 in cash and checks, in direct violation of the Board of Education's policies. (*Id.* ¶ 71.) Plaintiff "once again" requested that the Secretary be removed from the Student Projects Center but Brown refused. (*Id.* ¶ 72.) Shortly thereafter, Plaintiff was warned by Ciulla that Brown wanted Plaintiff to "back off" from her accusations. (*Id.* ¶ 73.) Plaintiff alleges that "[d]ue to her voicing of these

matters of public concern, Plaintiff was removed from her position of [SP] Coordinator" in July 2004. (*Id.* ¶ 74.)

### B. *Allegations of Age Discrimination*

Plaintiff alleges that all of the actions complained of in her pleading "took place after she was more than forty years of age." (*Id.* ¶ 29.) She further claims that the "actions of the District occurred under circumstances which give rise to inferences of discrimination based upon age." (*Id.* ¶ 33.) Finally, she alleges after she was removed from the position of SP Coordinator, she was replaced "with a teacher who is under the age of forty." (*Id.* ¶ 34.)

### C. *The DECA Trip and Plaintiff's Resulting Disciplinary Letter*

From April 30 through May 5, 2004, Plaintiff chaperoned a school trip to Nashville, Tennessee with nineteen of her students. (*Id.* ¶¶ 89-90.) Plaintiff claims that she was denied the right to bring several other teacher chaperones, in violation of the District's practices, in retaliation for her whistle blowing. (*Id.* ¶ 93.) After many requests, Plaintiff was ultimately allowed to bring one teacher and two security personnel. (*Id.* ¶ 92.) During the trip, several students violated school protocol and left the hotel to go to a local club. (*Id.* ¶ 95.) One of the students was physically injured at the club and had to be taken to the hospital by Plaintiff. (*Id.* ¶¶ 96-97.)

On May 6, 2004, "without advance notice and in violation of her due process rights to be accompanied by a union representative, Plaintiff was called into Ciulla's office." (*Id.* ¶ 102.) Plaintiff was questioned regarding the events that took place on the DECA trip. (*Id.*) Contrary to school policy requirements, Plaintiff received no formal review of her performance on the trip or any document or review concerning the meeting. (*Id.* ¶ 103.)

On May 17, 2004, Plaintiff was informed that she was going to be brought up on disciplinary charges pursuant to section 3020-a of the New York State Education Law and that she was going to lose her job for endangering the health of a minor. (*Id.* ¶ 104.) Thereafter, Roschelle, a teacher at Oceanside High School and Executive Vice President of the union representing the District's teachers, (*id.* ¶ 16), told Plaintiff that unless she signed a letter being prepared by the District, Plaintiff would lose her job. (*Id.* ¶ 105.) Plaintiff received the letter on May 21, 2004, a copy of which is annexed to the Complaint. (*Id.* ¶ 106.) The letter, which is written by Brown and dated May 21, 2004, sets forth information allegedly provided by Plaintiff at the May 6, 2004 meeting about the DECA trip. After summarizing Plaintiff's alleged position at the meeting, Brown sets forth in detail the "many lapses of supervision and judgment" that occurred during the trip. (*Id.* Ex. 10.) In conclusion he directs that Plaintiff's "role on overnight DECA trips be limited to ensuring that the students participate in the appropriate competitions. [Plaintiff] will no longer be responsible for chaperoning or supervising the students beyond that which is required to ensure their participation in these competitions. I am providing this letter to your file and the aforementioned consequence in response to this matter and offer you the opportunity to accept this in lieu of my proffering 3020-a charges" (*Id.*)

At the end of the letter is a paragraph with a line below for Plaintiff's signature. The paragraph provides as follows:

> I have read and understand the above letter. I have also had the opportunity to consult with a representative of my employee organization and/or counsel. I understand that my agreement to the entry of the foregoing document on my file, as well as to the action proposed to be taken by the Superintendent of Schools, will constitute a waiver of my rights as a tenured employee pursuant to Education Law, Section 3020-a, including the right to receipt of notice of charges, a hearing on the record, the right to cross-

> examine witnesses, the right to call witnesses, the right to counsel, and the right to review of appeal as provided by statute.
>
> I agree with the content and terms of the above letter and consent to it being placed in my personnel file.

(*Id.*) The letter is signed by Plaintiff and witnessed by Roschelle, as "Counsel or Union representative." (*Id.*)

Plaintiff claims that she signed the letter under duress because she was told that if she did not, she would lose her job. (*Id.* ¶ 111.) Moreover, she claims that although other teachers took students on school trips where there were student disciplinary problems, she was the only one to ever receive such a letter. (*Id.* ¶ 114.)

### D. *Plaintiff's Termination as SP Coordinator*

On June 3, 2004, Plaintiff was told by Ciulla that she was terminated as SP Coordinator effective for the 2004-2005 school year. (*Id.* ¶ 36.) As a result, Plaintiff lost her stipend which was $7,764.00 per year. (*Id.* ¶ 41.) Plaintiff claims that she received no notification of her termination prior to her June 3, 2004 meeting with Ciulla. (*Id.* ¶ 37.) She further alleges that when she asked Ciulla why she had not been informed so she could have had union representation at the meeting, Ciulla responded that "the Union knew about the termination and this meeting, and that the Union was 'ok' with it." (*Id.* ¶ 129.)

### E. *The Grievance Procedure*

From June through September 2004, Plaintiff pursued a grievance through the Union regarding the May 21, 2004 letter to the file. (*Id.* ¶¶ 130-32.) After proceeding through the first three steps, on October 4, 2004, the Union served its demand for initiation of the fourth stage, arbitration. (*Id.* ¶ 133.) As of the date the Complaint was filed, the Union and the District

have refused to set a date for the arbitration despite numerous requests by Plaintiff to do so. (*Id.* ¶ 134.)

  **F.** ***Other Disparate Treatment***

  Plaintiff alleges that the "Defendants set out on a course of provocative and illegal conduct designed to make Plaintiff's every working day so miserable that she would quit her position." (*Id.* ¶ 136.) Examples offered are a "marathon of classroom monitoring," (*id.* ¶ 137), "actions taken to harass Plaintiff and set her up for failure," (*id.* ¶ 142), and "Roschelle has continually baited Plaintiff and suggested that she retire." (*Id.* ¶ 145.)

  **G.** ***The Complaint***

  On July 19, 2004, Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 6-7.) This complaint included allegations of discrimination based upon age, lack of due process, retaliation, and disparate treatment. (*Id.*) On January 21, 2005, Plaintiff received her Right to Sue Notice and on March 24, 2005, the NYSDHR dismissed her claim. (*Id.* ¶ 9.)

  Plaintiff filed the instant action on April 12, 2005. The Complaint asserts six causes of action, to wit: (1) a violation of the ADEA and the Fourteenth Amendment; (2) a violation of the First and Fourteenth Amendments pursuant to Section 1983 based on Plaintiff's alleged wrongful termination resulting from her speech on matters of "public concern"; (3) a violation of the Fourteenth Amendment pursuant to Section 1983 based on Plaintiff's allegedly wrongful termination from a position in which she allegedly had a property interest and related act which ruined her reputation; (4) a violation of the First and Fourteenth Amendments

pursuant to Section 1983 based on Defendants' acts of coercing Plaintiff to sign the May 21, 2004 letter; (5) a claim for punitive damages; and (6) a claim for attorney's fees under 42 U.S.C. § 1988. In addition, although not elaborated on in the body of the Complaint, and not later denominated as causes of action, in the beginning of her pleading Plaintiff lists claims purportedly being asserted under state law, including breach of contract and defamation. (*Id.* ¶ 5.)

## DISCUSSION

### I. *Motion to Dismiss: Legal Standards*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief in support of his claim. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).

### II. *Plaintiff's ADEA Claims*

Plaintiff's ADEA claims against Roschelle fails as a matter of law as the ADEA does not provide for individual liability. *See Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under *any* of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA."); *Parker v. Metropolitan Transp. Auth.*,

97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000) (holding that a union president is not individually liable under ADEA); see also *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (applying same analysis in context of Title VII), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Accordingly, Plaintiff's ADEA claims are dismissed as to Roschelle.

The parties do not address Plaintiff's age discrimination claims under the NYSDHR. Presumably, Roschelle fails to do so because it is unclear from the pleading whether Plaintiff is asserting a claim under this statute, although it is generally referenced. (*See* Compl. ¶ 5.) Nonetheless, to the extent the Complaint can be construed to assert age discrimination claims pursuant to the NYSHRL, and to the extent Roschelle moves to dismiss Plaintiff's these claims based on his status as an individual, his motion is denied. Section 296(6) of the NYSDHR states that it is a unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that this language imposes individual liability on a defendant who actually participates in the conduct giving rise to a discrimination claim. *See Tomka,* 66 F.3d at 1317. Neither party addresses whether the allegations are sufficient in this regard and the Court accordingly declines to dismiss the Complaint on this basis at this juncture.

To the extent Roschelle moves to dismiss Plaintiff's age discrimination claims on the ground that they fail to state a claim, his motion is also denied. Discrimination claims under the NYSHRL are subject to the same analysis as claims brought pursuant to the ADEA. *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Plaintiff argues that her pleading is adequate because it states a prima facie case of age discrimination. In this regard, the

Complaint alleges that Plaintiff: (1) was a member of a protected class, (2) was qualified for the position she held, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent (being replaced by a person who is not a member of the protected class). *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (stating elements of prima facie case); *see also Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (fourth prong of prima facie case satisfied if plaintiff's position ultimately filled by person not member of protected class). Although Plaintiff correctly summarizes her allegations, she misstates the pleading requirement.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that a plaintiff is not required to plead facts establishing a prima facie case in order to state a claim for employment discrimination. *Id.* at 997, 999. Rather, under Rule 8(a), a plaintiff need only allege "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 998 (quoting Fed. R. Civ. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 41 (1957)). Here, the Complaint satisfies this standard as it provides Roschelle with fair notice of the basis for Plaintiff's age discrimination claims. Accordingly, the Court declines to dismiss Plaintiff's NYSHRL claims on this ground.

In sum, Roschelle's motion to dismiss Plaintiff's ADEA claims is granted; Roschelle's motion to dismiss Plaintiff's NYSHRL claims is denied.

### III. *Plaintiff's Section 1983 Claims*

#### A. *State Action*

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See id.*; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Roschelle argues that as a union representative, the Complaint fails to allege that he is a state actor or that he conspired with a state actor to deprive Plaintiff of her constitutional rights. The Court disagrees.

Labor representatives such as Roschelle are generally not considered state actors and Plaintiff does not argue otherwise. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Instead, Plaintiff contends that Roschelle acted under color of state law by conspiring with the other defendants.[1]

The elements of a Section 1983 conspiracy claim are: (1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm. *Id.* at 324-25. Prior to the Supreme Court's decision in *Swierkiewicz*, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a

---

[1] Although Roschelle is alleged to be not only the Executive Vice President of the union but also a teacher, neither party addresses whether Roschelle may be considered a state actor by virtue of the latter position.

conspiracy to deprive the plaintiff of his constitutional rights" were generally found to be inadequate under Rule 12(b). *Id.* at 325 (citations and internal quotation marks omitted). In *Swierkiewicz*, however, the Supreme Court held that the simplified pleading standard in Rule 8(a) applies generally to all civil actions. 534 U.S. at 513. Regardless of which standard is used, Plaintiff's claims pass muster.

Plaintiff alleges that Roschelle, Ciulla, and Brown, acting in concert, coerced Plaintiff to sign the May 21, 2004 letter, forcing her to give up her contractual and due process rights. (Compl. ¶¶ 126-27.) In this regard, she alleges that Roschelle told her that she would lose her job if she did not sign. Plaintiff further alleges that when she subsequently asked Roschelle for advice as to what she should do about the letter, he told her to "'see a psychiatrist' and laughed as she burst into tears in the hallway." (*Id.* ¶ 128.) Finally, she alleges that Roschelle acted as Student Advisor to a student organization during which time three students "went off on their own and were expelled" after one of the students sexually molested another. (*Id.* ¶ 115.) Plaintiff alleges that unlike what happened to her following the DECA trip, Roschelle was not held accountable for these infractions and "has not received a letter similar to the one he coerced Plaintiff to sign." (*Id.*)

Thus, based on these allegations, Plaintiff alleges that Roschelle acted in concert with the other defendants to deprive her of her constitutional rights and performed an overt act, i.e., coercing her to sign the letter, in furtherance of their goal, which allegedly led to her termination. Although the relationship between a union and its employer is by its very nature adversarial, *see Ciambriello*, 292 F.3d at 324, thus calling into question why Roschelle would act in concert with the other defendants, there are allegations in the Complaint from which one can

infer that he may have done so to earn preferential treatment, as he allegedly received when he was not reprimanded for his role in the sexual molestation incident described above.

In sum, the Court finds that the Complaint satisfies the state actor requirement for a Section 1983 claim. Accordingly, the Court turns to an analysis of the underlying constitutional violations as alleged.

### B.     First Amendment Retaliation

Plaintiff alleges that she was removed as SP Coordinator "as a direct result of reporting the illegal conduct of Defendant District and its officials, as her removal as Coordinator would eliminate her interaction and oversight of the school district's finances for high school student extracurricular activities." (Compl. ¶ 51.) Although Roschelle moves to dismiss the Complaint in its entirety, he does not specifically address Plaintiff's claims under the First Amendment. Instead, he presumably relies on his argument that the Section 1983 claim is insufficient based on a failure to allege state action. Because the Court has rejected that argument, and because Plaintiff's memorandum of law addresses the alleged viability of her First Amendment retaliation claims, the Court will briefly discuss them below.[2]

In order to state a claim of First Amendment retaliation under Section 1983, a plaintiff must allege that "(1) his actions were protected by the First Amendment; and (2) the defendant's alleged conduct was in response to that protected activity." *Velez v. Levy*, 401 F.3d

---

[2] The parties conflate the requirements under the First Amendment with those under the Fourteenth Amendment, as both parties imply that Plaintiff's rights under the former are dependent upon Plaintiff having a property interest in the SP Coordinator position. Although a procedural due process claim under the Fourteenth Amendment requires a party to demonstrate that she was deprived of a protected property or liberty interest, *see infra*, a claim under the First Amendment has no such requirement. Thus, the fact that the SP Coordinator position was non-tenured is irrelevant to the First Amendment analysis.

75, 97 (2d Cir. 2005). As to the first element, the question of whether an employee's speech addresses a matter of public concern is one of law, not fact. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see also Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick*, 461 U.S. at 146). "If the speech, however, is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, 'has greater latitude to discipline' the employee." *Id.* (quoting *Connick*, 461 U.S. at 146).

As to the second element, "[t]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris*, 196 F.3d at 110 (citations omitted).

Here, Plaintiff's allegations that she complained about the District's financial improprieties, and was thereafter removed from the SP Coordinator position so that she could no longer report on any such improprieties, would appear generally to satisfy these pleading elements. The Court notes, however, that there are no allegations linking Roschelle to the facts upon which Plaintiff's First Amendment retaliation claim is based. This point was not broached by Roschelle. In any event, on the arguments advanced by Roschelle, the Court declines to dismiss Plaintiff's First Amendment retaliation claims.

### C. Fourteenth Amendment/Procedural Due Process

The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), *limitation of holding on other grounds recognized by*, *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003). Thus, to prevail on a procedural due process claim under the Fifth and Fourteenth Amendments, a plaintiff must demonstrate that he was deprived of a protected property or liberty interest. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

#### 1. Property Interest

Plaintiff alleges that "she was provided neither notice nor the opportunity to be heard prior to her removal from [the] position" of SP Coordinator and has therefore "been deprived [of] her procedural due process rights in accordance with the Fourteenth Amendment." (Compl. ¶ 32.) She further alleges that she retained this position for ten years and "as such had a reasonable expectation and financial property interest within said position." (*Id.* ¶ 84.)

Roschelle asserts that "Plaintiff does not aver that she had any property, constitutional or contractual right to continued assignment to this non-tenure bearing position to oversee co-curricular activities." (Def.'s Mem. at 5.) Plaintiff counters that she held her position for ten years and performed "admirably and received wonderful evaluations and laudatory comments concerning her performance in that position." (Pl.'s Mem. at 8.) She argues that "[w]hether such positive performance for such a long period of time creates a legitimate claim of entitlement is a question of fact to be determined at trial." (*Id.*) Plaintiff is mistaken.

In order to demonstrate an interest protectable under the Constitution, a person must

have a "'legitimate claim of entitlement to it.'" *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (quoting *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). "An abstract need, desire or unilateral expectation is not enough." *Id.* Thus, while an employee who may be removed only for cause may have a protectable property interest, employees at will share no such protection. *Id.* (citing *Goetz v. Windsor Cent. Sch. Dist.,* 698 F.2d 606, 608-9 (2d Cir. 1983) and *Arnett v. Kennedy,* 416 U.S. 134, 151-52 (1974) (plurality)). Finally, if a plaintiff can establish a "*de facto* system of tenure," a property interest may also be implicated.[3] *Id.* (citing *Goetz,* 698 F.2d at 609).

Based on these principles, Plaintiff has failed to allege that she was deprived of a protected property interest as she has not alleged that she had any right to the SP Coordinator position beyond her own subjective expectation. Therefore, Roschelle's motion to dismiss the procedural due process claim is granted.[4]

### 2. Liberty Interest

Plaintiff alleges that she has been deprived of a protected liberty interest in violation of the Fourteenth Amendment because her "good name, professional standing and reputation, honor

---

[3] *Goetz* cites to *Perry v. Sinderman*, 408 U.S. 593 (1972), where the Supreme Court found a de facto tenure system existed where college's official faculty guide provided: "'Teacher Tenure: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work,'" and the plaintiff claimed legitimate reliance upon guidelines which stated that a teacher with more than seven years experience had some form of job tenure. *Id.* at 600.

[4] Plaintiff's citation to *Mancabelli v. Solvay Union Free School Dist.*, 180 F. Supp. 2d 371 (N.D.N.Y. 2001) is entirely inapposite. In that case, the court treated defendant's failure to reappoint plaintiff to a non-tenured, non-contracted for position as an adverse employment action for purposes of finding that Plaintiff had satisfied his prima facie case under the ADEA. *Id.* at 377 n.2. Due process had nothing to do with the analysis.

and integrity have been denigrated and destroyed, and her ability to pursue her chosen profession has been put at risk by Defendants' actions." (Compl. ¶ 83.) Roschelle does not specifically address this point in his memorandum and the Court therefore declines to dismiss this portion of Plaintiff's Fourteenth Amendment claim. Nonetheless, the Court briefly discusses Plaintiff's claimed liberty interest below.

Loss of one's reputation can invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d. Cir. 2004). For a government employee, a cause of action under Section 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment. *Id.*; *see also Morris*, 196 F.3d at 114. This is the type of claim that is commonly referred to as a "stigma-plus" claim. *See Patterson*, 370 F.3d at 330.

In order to fulfill the requirements of a stigma-plus claim arising from the termination from government employment, a plaintiff must first show that the government made stigmatizing statements about him–statements that call into question plaintiff's "good name, reputation, honor, or integrity." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" may also fulfill this requirement. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996). A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false. *See Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir.1987). Second, a

plaintiff must prove these stigmatizing statements were made public. *See Abramson*, 278 F.3d at 101-02. And third, plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment. *See Martz v. Incorporated Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994) (five months later for publication of defamatory statements is too long).

Here, Plaintiff alleges that she was terminated from the SP Coordinator position shortly after she was forced to sign a letter containing allegedly false charges citing her many "lapses of supervision and judgment," which was thereafter placed in her personnel file. Although the letter has not been disseminated to the public, the Second Circuit has found that the stigmatizing false statement can satisfy the publication requirement if it is placed in an employee's personnel file where it is likely to be disclosed to future employees. *Brandt*, 820 F.2d at 45 ("If [plaintiff] is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities."). Thus, it would appear that Plaintiff's claims of a deprivation of a liberty interest may satisfy Rule 12(b). It should be noted, however, that Roschelle does not address the liberty interest component of Plaintiff's Fourteenth Amendment claim in either his moving papers or reply papers. Thus, to the extent Roschelle moves to dismiss Plaintiff's Fourteenth Amendment claim, and to the extent such claim is premised upon an alleged deprivation of a protected liberty interest, Roschelle's motion is denied.

## IV.  *Plaintiff's State Law Claims*

In the introductory section of the Complaint, Plaintiff references claims for breach of contract and defamation. Roschelle moves to dismiss these claims. Although these claims are

not officially denominated as causes of action later in the pleading, to the extent the Complaint can be construed to assert them, the Court will address them in turn.

Under "Contract Damages," Plaintiff alleges that the District breached its employment contract with Plaintiff as well as violated the implied duty of good faith and fair dealing. (Compl. ¶ 5(b).) There are no allegations as to Roschelle in this section nor are there any other allegations in the body of the Complaint that assert that Roschelle breached any contractual duties he may have owed Plaintiff via the Union. Moreover, although Roschelle moves to dismiss this claim, Plaintiff fails to oppose this application in her opposition papers Thus, the Court concludes that the Complaint fails to allege a breach of contract claim against Roschelle and, accordingly, does not address Roschelle's arguments in this regard.

With regard to Plaintiff's claim for defamation, a plaintiff must identify the alleged defamatory statement, the person who made statement, when the statement was made, and the third parties to whom statement was published. *See, e.g.*, *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005). Plaintiff's claim fails because she does not allege that Roschelle made a false statement about her that was published to third parties. Rather, the alleged defamatory statement, the May 21, 2004 letter, was written by Brown. Accordingly, Plaintiff's defamation claim is dismissed as to Roschelle.

## CONCLUSION

For all of the above reasons, defendant Roschelle's motion to dismiss the Complaint is GRANTED in part and DENIED in part. The motion is GRANTED as to Plaintiff's claims: (1) under the ADEA; (2) under Section 1983 based on an alleged deprivation of property interests under the Fourteenth Amendment; (3) for breach of contract; and (4) for defamation. The motion

is DENIED as to Plaintiff's claims: (1) under the NYSHRL; and (2) under Section 1983 based on First Amendment retaliation AND Fourteenth Amendment deprivation of a protected liberty interest.

**SO ORDERED.**

Dated: Central Islip, New York
March 30, 2006

/s/
Denis R. Hurley
Unites States District Judge